UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY


UNITED STATES OF AMERICA          :          Criminal Number 16-449 (FLW)
                                                        :
                                                        :
                    v.                            :
                                                        :
                                                        :
THEODORE L. CLARK, III            :


_____


DEFENDANT THEORDORE CLARK'S MEMORANDUM OF LAW IN
SUPPORT OF PRETRIAL MOTIONS

_____


Lisa Van Hoeck
Assistant Federal Public Defender
Federal Public Defender's Office
22 South Clinton Avenue
Station Plaza Four, Fourth Floor
Trenton, New Jersey 08609
(609) 989-2160

Table of Contents

Table of Authorities ......................................................................................................... ii

Preliminary Statement ......................................................................................................1

Legal Argument ................................................................................................................4

      Point One ...................................................................................................................4

      Given the duration of the traffic stop beyond a reasonable conclusion,
      any evidence seized thereafter should be suppressed

      Point Two...................................................................................................................8

      Defendant seeks leave to file additional motions to compel discovery

Conclusion .........................................................................................................................9

Table of Authorities

Cases

Arizona v. Johnson, 555 U.S. 323 (2009) ................................................................4, 5

Delaware v. Prouse, 440 U.S. 648 (1979) ................................................................4

Florida v. Royer, 460 U.S. 491 (1983) ................................................................5

Pa. Bd. of Prob. & Parole v. Scott, 524 U.S. 357 (1998)................................................................3

Rodriguez v. United Sates, 135 S. Ct. 1609 (2015) ................................................................5

Terry v. Ohio, 392 U.S. 1 (1968)................................................................4, 5

United States v. Givan, 320 F.3d  452 (3d Cir. 2003) ................................................................5

United States v. Mosley, 453 F.3d 249 (2006) ................................................................4

United States v. Pruitt, 174 F.3d 1215 (11th Cir. 1999) ................................................................7

United States v. Sandoval, 29 F.3d 537, 542 (10th Cir. 1994)................................................................6

United States v. Thomas, 863 F.2d 622 (9th Cir. 1988) ................................................................7
7
Whren v. United States, 517 U.S. 806 (1996) ................................................................4

Wong Sun v. United States, 371 U.S. 471(1963) ................................................................4

Statutes

18 U.S.C. § 922(g) ................................................................3

## **Preliminary Statement**

On February 21, 2016, shortly after midnight, Edison police officer Daniel Bradley stopped a minivan operated by Donald Roberts for motor vehicle offenses, including driving briefly without headlights, obstructed view, and driving while using a cell phone.  Defendant was a passenger in the minivan.  A camera mounted to the patrol car's dashboard recorded the stop. Bradley controlled the audio by activating and deactivating a body worn microphone.  The government provided a copy of this recording as discovery.  Defense counsel then had the audio forensically enhanced.  A copy of the enhanced recording is attached as Exhibit A.

After pulling over the minivan, the officer sought credentials from the driver.  (Exhibit A at 00:10:30). Bradley also informed the driver of the reason for the stop.  (*Id.* at 00:11:48). Roberts advised Bradley the van belonged to his mother and offered to call her to determine the whereabouts of the registration. (*Id.* at 00:11:05; 00:11:45; 00:12:07).  Bradley took possession of Roberts's license and the insurance identification, then retreated to the rear of the vehicle to observe the plate in order to run the registration.  (*Id.* at 00:12:18).  He returned to his patrol car and entered the driver's information and the plate number into a mobile data terminal.  This remote portable computer permits access to New Jersey Motor Vehicle Commission records as well as New Jersey State Police State Bureau of Investigation Criminal Justice Information System records.  He received responses.  He then returned to Mr. Roberts's car, full knowing Mr. Roberts had no active warrants and a valid driver's license. He confirmed the car was registered and not reported stolen.  He had reviewed a copy of the insurance identification card.  He also knew Mr. Roberts had a criminal record.  At this point, there were no impediments to the officer's issuing traffic tickets and sending Roberts on his way, mission accomplished.

Instead, Bradley chose to extend the stop to question Roberts. Bradley approached the driver's side door to begin his interrogation. (*Id.* at 00:16:44). The officer' questions had nothing to do with the traffic stop. Roberts was not free to leave.

Bradley asked Roberts about his criminal record: had he ever been arrested, for what kinds of crimes had he been arrested, and the date of his last arrest. (Exhibit A at 00:16:54). He asked where Roberts was coming from, explaining his whereabouts were relevant to his past arrests. (Exhibit A at 00:18:15 "and relevant to being arrested, I'm trying to figure out where you were coming from"). He told Roberts that he had reviewed his criminal record and had asked him about it to test his truthfulness. (*Id.* at 00:18:21 "I pulled up your history and wanted to see if you were lying to me" and 00:19:15 "I ran your driver's license and saw your history. That's why I asked you to confirm [sic] if you were lying"). Bradley asked how many times he had been arrested. (*Id.* at 00:19:56). Roberts became frustrated at this intrusion into his privacy. He asked what the relevance of his criminal record was to a motor vehicle stop, which in turn annoyed the officer. (*Id.* at 00:20:20). Bradley then ordered Roberts out of the car. (*Id.* at 00:20:05). Roberts complied. (*Id.* at 00:20:06).

At the rear of the minivan, Bradley again acknowledged that he had run Roberts's license and had checked him for warrants. (*Id.* at 00:20:21). He then began interrogating Roberts about his relationship to defendant. (*Id.* at 00:20:39). He wanted to know Mr. Clark's name, where Roberts picked him up, where Clark lived, and more. None of this bore the slightest relation to the offenses of driving without headlights, hanging an item from the rear view mirror, and using a cell phone while driving, and again, long after the traffic stop had concluded. Bradley had interdicted the van, run the driver, his license and plates, and all had come up negative. The traffic stop was over.

Bradley approached the passenger side to question the defendant.  (*Id.* at 00:21:48).  He returned to the driver, claimed the men had given conflicting accounts and repeatedly asked Roberts why he had lied.  (*Id.* at 00:25:05).  Bradley said he smelled a strong odor of marijuana from the passenger side of the car.  He declared at least three times that he smelled nothing while leaning into the driver's side.   (*Id.* at 00:27:08, 00:30:33, 00:35:00).  Bradley announced to Clark he would have to get out of the van, because the police intended to search it.  (*Id,* at 00:29:09).  After Clark had been removed from the van, a pat frisk revealed the handgun Clark had on his person.  (*Id.* at 00:31:39).  Clark was taken into custody. (*Id.* at 00:52:34).  Roberts was permitted to leave.  (*Id.* at 01:00:00, 01:06:00).

Defendant was first charged in Middlesex County with possession of marijuana, unlawful possession of a weapon, and certain persons not to possess a weapon.  At the same time, Mr. Clark received notice of a parole violation based on the same conduct and was remanded to East Jersey State Prison.  Thereafter, he had his parole revoked[1].  About seven months after the arrest, the United States Attorney for the District of New Jersey sought and obtained an indictment charging Mr. Clark with possession of a weapon as a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

Defendant now moves to suppress the evidence of a gun seized from him well after a motor vehicle stop should have concluded.

---

[1]  A revocation need not await disposition of the underlying criminal case. Furthermore, the Fourth Amendment's exclusionary rule does not apply to a revocation proceeding.  *See Pa. Bd. of Prob. & Parole v. Scott,* 524 U.S. 357, 363 (1998).

## Point One

**Given the extension of the traffic stop beyond its reasonable conclusion, any evidence seized thereafter should be suppressed.**

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  The Fourth Amendment requires suppression of evidence that is the fruit of an unlawful search or seizure. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963).  "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period" constitutes a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10 (1996).  The law draws no distinction between passenger and driver, and therefore each has standing to challenge a stop's constitutionality.  *Arizona v. Johnson*, 555 U.S. 323, 332 (2009) (internal citations omitted). *See also United States v. Mosley*, 453 F.3d 249, 253 (2006)(citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)).

Generally, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S at 810.  Because an ordinary traffic stop is "more like an investigative detention than a custodial arrest ... the limits of police conduct in routine traffic stops" are analyzed using the standard set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). The Court first must consider "whether the officer's action was justified at its inception, and [second,] whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 20.  With regard to *Terry*'s first prong, it is clear that at its inception, the traffic stop in this case was justified. Officer Bradley observed Roberts driving briefly without headlights.   The video confirms his observation, and the defendant does not contest the lawfulness of the initial stop.

4

Here, the relevant focus is on *Terry's* second prong:  whether the traffic stop is appropriately limited in scope and duration.  *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion).  The Supreme Court explained "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop."  *Id.*   An officer may inquire into matters unrelated to the justification for the traffic stop, so long as the questioning does not "measurably extend the duration of the stop."  *Arizona v. Johnson,* 555 U.S. at 333.  More recently, the Court reiterated this long-standing principle, holding a traffic stop violates the Fourth Amendment if it "exceed[s] the time needed to handle the matter for which the stop was made," even if the stop is prolonged by only a few minutes.  *Rodriguez v. United Sates,* 135 S. Ct. 1609, 1612, 1614-15(2015).

In *Rodriguez,* the Court defined a police officer's mission during a traffic stop:

> Beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to the traffic stop.  Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance.

*Id.*  at 1615 (internal citations omitted).  The Court flatly rejected an argument advancing a *de minimis* rule for continued detention beyond that which is necessary to process the traffic stop. *Id*. at 1615-16.  It likewise rejected the argument that the permissible duration of a traffic stop should be gauged by how long a stop typically lasts: An officer does not "earn bonus time to pursue an unrelated criminal investigation" simply because he "complete[s] all traffic-related tasks expeditiously."  *Id.* at 1616.  Justification for a traffic stop ends when the tasks associated with the stop end or reasonably should have ended.  *Id.*  It may only be extended if the officer has a reasonable articulable suspicion that criminal activity may be afoot.  *See United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003).

In the case at bar, the stop was over when the officer ran the credentials of the driver, determined they were in order, and had the necessary information to issue traffic summonses. The driver went so far as to make his mother available to answer a question about the address listed on the registration. One viewing the video of the police-driver interaction to the point of the officer's return to Mr. Roberts would rationally conclude the matter concluded:  tickets issued; driver sent on his way.

What happened next begs the question of what motivated the officer.  From the timing of events after Officer Bradley returned to the driver's door, one can easily infer Roberts' prior criminal record raised a flag with the officer.  His first questions after returning to the driver all related to whether the man had been arrested, how many times he had been arrested, what the arrests were, and whether there might be some other charges not reflected in the MDT.

One need not be an especially acute observer of human behavior to appreciate what happened next.  Roberts was understandably offended by the persistent interrogation about his criminal record.  He expressed his frustration verbally, but not intemperately, profanely, or physically.  Still, the officer opened the door wider and ordered him out of the car.  There were no articulable grounds, reasonable or otherwise, to suspect criminal activity beyond the uncontroverted fact Roberts had a criminal record.  But a past criminal record standing alone does not provide an officer with a basis to presume criminal activity is afoot.  *See United States v. Sandoval,* 29 F.3d 537, 542 (10th Cir. 1994) (collecting cases).  The rule rests on compelling logic.  If every driver with a criminal record were subject to an inference of criminal activity, no convicted person would ever find safe harbor in the Fourth Amendment.  *Id.* at 543.

Arguably Officer Bradley knew a criminal record alone was insufficient to extend the stop, hence his resort to detailed inquiries about Roberts' record, followed by questions about his

passenger and his relationship with Mr. Clark.  Bradley plainly tried to trip Roberts on an answer, any answer, to extend the detention.  An officer cannot create reasonable suspicion out of his own interrogation.  This is just the sort of bootstrap construct that our courts have disapproved.  *See United States v. Thomas*, 863 F.2d 622, 629 & n.8 (9th Cir. 1988); *United States v. Pruitt*, 174 F.3d 1215, 1221 (11th Cir. 1999).

Once he learned Roberts had a record, Officer Bradley's intention was, as he clearly expressed later on the tape, to search the car.  But when he returned to the van with Mr. Roberts' credentials, he should have issued the traffic tickets and sent the man on his way.  The tape shows and tells why he did not.  A careful review of the video compels the conclusion that defendant is entitled to the relief sought.

## Point Two

**Defendant seeks leave to file additional motions to compel discovery.**

In preparing this motion for consideration, defendant asked for discoverable information to verify certain aspects of Officer Bradley's report. Defendant has received the officer's narrative report, Computer Assisted Dispatch ("CAD") records, and the videotape of the stop from the patrol car-mounted camera.

Defendant has made repeated requests for access to search records of the Mobile Data Terminal Officer Bradley used to run the driver's license, motor vehicle pedigree, and criminal history. Counsel has enlisted the assistance of the government, the Edison Police Department, and the Middlesex County Prosecutor, who is investigating the request at this time. Should the effort to obtain these records not bear fruit informally, defendant seeks an opportunity to return to this court for assistance. This court's authority to compel production of preserved information should be a last resort, but defendant should be permitted to return if the situation warrants.

## **Conclusion**

For the reasons stated, Defendant Clark respectfully submits his motions should be granted.

Respectfully submitted,

s/ Lisa Van Hoeck

Lisa Van Hoeck
Assistant Federal Public Defender

Attorney for Theodore Clark

Dated: March 10, 2017